### ROBERSON *v.* THE STATE.

1. The evidence was sufficient to sustain the verdict of voluntary manslaughter. (R.)
2. A ground for new trial complaining of the admission of evidence but not setting out what objection was made to the evidence at the time it was introduced, or that any objection was then made, cannot be considered. (R.)

May 8, 1891.

Criminal law. Manslaughter. Evidence. Verdict. Practice. Before Judge HUTCHINS. Oconee superior court. January term, 1891.

Lon Roberson was indicted for the murder of John Owens. The evidence for the State tended to show the following: Owens was killed by Roberson in November, 1889. About the first of that year they had had "a little scrimmage," but it did not appear what their difficulty was about. On the day of the killing John had gone with an ax up to a wagon where Lon was, had dunned him for money and cursed him. They agreed to fight after working hours. After working hours and about dark, John sought Lon, found him behind a buggy-house, and there the fatal difficulty began. None of the witnesses saw what occurred there. When they were first seen after the encounter there, John was running and Lon after him. John had nothing in his hands,

v 87-14

but, according to one witness, Lon was running after John with a knife, and when Lon overtook John, John turned around and threw at him a rock which John had picked up, and after he threw the rock John had a pole; but this witness did not see John strike Lon and did not see him hit Lon with a plow-point. When Lon overtook John he cut John in the shoulder. John slipped up and then Lon jumped on him. It was after the quarrel, on the day of the fatal difficulty, when Lon got the knife. He borrowed it from another, said he wanted to make some fiddle-screws, and went and sat down and was whittling. Another witness testified that he did not see Lon do anything to John; that John was running and Lon was after him; that they ran one hundred yards, he reckoned; that he did not know whether John fell down or not—when he saw them they were together and Lon was on top; that Lon hit John three times in the face with his fist, at that time having his knife in his hand; that John was begging Lon to get off of him, and begged witness once to take him off; that John did not have anything in his hands; that shortly before the difficulty John had asked witness where Lon was, but did not say what he wanted with him, and witness told him that Lon went toward the buggy-house, and John went right on down that way and went behind the buggy-house; that witness did not see anything like the plow-point or pole or rock in John's hands. A physician testified that John Owens was wounded in three places: one cut in his right shoulder, one in his left arm and one his bowels, all of which seemed to have been made with a knife, the last being the fatal one. He lived four or five days after witness was called to see him. The stab in the shoulder could possibly have been made while John was on top of Lon. This witness also treated Lon; dressed a cut on his head, which was a lacerated wound requiring

four stitches; the skin looked like it had been torn, was more of a bruise than anything else, and appeared to have been made with a dull instrument; the skull was not fractured and the wound seemed to have been made by two licks. Witness did not know whether it could have been made with an instrument like a plow-point with a piece or wing, but thought not; it looked like it was made with a curved instrument. If a rock, the size of one shown to him, had been thrown at Lon by John and had struck Lon, it would be likely to produce death. A pole (the one in court) in John's hands would be a weapon likely to produce death. The two men were very nearly the same size. John seemed to be a very stout man. After Lon was brought to jail the physician found a wound on his shoulder, which seemed to be from a glancing lick and could have been made with a rock or some hard instrument. This wound he did not see the night Lon was hurt, and when he saw it there was a scab on it showing that it had been a considerable bruise. It looked more like there had been several scratches together than anything else he could think of. There appeared to be no bruised blood there. The wound on Lon's head was not such a wound as you would expect from a rock; it would take a large rock to make it; it could be done by a sharp rock. Witness did not know whether the wound in John's stomach could have been made while John was on Lon, or not. Before the coroner's jury Lon made a statement in which he said, they had had some trouble out at a new ground before the fight and cursed each other and that they then came home, and that John Owens came to the buggy-house and John took him by the collar and he cut him. The coroner told Lon to make such statement as he saw proper, and the statement was taken down and read to Lon and he said it was correct.

The testimony for defendant tended to show that John was the better man physically. Only one of defendant's witnesses saw anything of the difficulty, and he only the latter part of it. When he got to them, John had a rail in his hand and hit Lon over the head with it, and said to witness, who was their emyloyer, he would give witness five dollars to let him whip the "damn nigger." Witness told him they could fight if they would fight fair, and asked John where was his money. John said he did not have any money, but would work for witness twenty-five years if he would let him kill "that damn nigger." Lon did not show any disposition to fight. All at once John gathered him and threw him under the buggy-shelter, and witness saw then that John was cut. John and Lon were friendly before this difficulty, but afterwards John's brother told witness of a former fight in the woods and said they both quit laughing. Up to the 12th of July that year, Lon had stayed at John's house, slept there every night, and John's wife did his washing for him. The night John died he sent for witness and said he was going to die, and told his wife he was going home, that he did not want her or any of her folks to do anything with Lon, that he brought it on himself. Witness did not know whether he realized that he was in a dying condition or not, but he died in twenty or thirty minutes, and witness thinks he thought he was going to die. Lon was smaller than John. Witness did not see John with a plow-point or rock in his hands. The rail with which John struck Lon might have caused the wound on Lon's head, and that wound might have been made after the cutting. John had no knife, and Lon gave up his knife to witness. The plow-point in court witness picked up at the corner of the buggy-house where they had the fight; there was no blood on it when he found it; it had been raining. The next morning there was blood

where they fought.   The night he died, and while he was in a dying condition and knew the fact, John told another witness that he was to blame in the whole matter, that he brought the difficulty on with Lon, and that if he had listened to his wife that night he would not have gone up there to hunt Lon.   He told this witness and others this several times the night before he died. About half an hour before he died he sent for Lon and told Lon that the Lord had forgiven him and that he had nothing against Lon, that he brought the whole trouble on himself; and he told his wife not to do anything with Lon, for he was to blame in the whole matter.

The defendant made a statement to the following effect : That afternoon he was getting wood and went by John, who called him and he did not answer, and John asked him why in the hell he did not answer and kept on cursing defendant.   He walked up to defendant and said his wife wanted some money ; defendant said he had none, and John said he was going to have it.   Defendant went on getting his wood.   John came up with his ax on his shoulder, and another, who was present, said they had better not have any fuss as he would tell the boss.   Then defendant said he would not have any fuss now, and John said he would get him to-night, and went on back.   Defendant carried his wood to the house, put up and fed the mules, unloaded the wood and went to cutting wood.   John took in his wood ; defendant went behind the buggy-house and was fixing a peg when John came up and said he would whip defendant or defendant would whip him, and cursed defendant, using very opprobrious language, to which defendant replied similarly.   John grabbed a plow-point about the size of the one in court, and hit defendant on the head; defendant fell and John got on him, and defendant cut him.   Then defendant went on around the lot and dodged behind the bars, and John ran up and

said if he made another move he would knock his brains out. About that time John struck him on the shoulder with a rock, and he fell to his knees and cut John in the bowels just as John reached for something else. He got up and ran, and John ran after him. The boss came up, and John said he would work for him twenty years if he would let him knock defendant's brains out. The boss took the piece of rail from John and said quit, and then John ran defendant under the buggy-shelter, and when he got up, hit him with a stick; and then the boss stopped John.

The defendant was found guilty of voluntary manslaughter. He moved for a new trial on the grounds that the verdict was contrary to law, evidence, etc., and because the court allowed proof of confessions that were in the statement he made before the coroner's inquest. The motion was overruled, and defendant excepted.

B. E. THRASHER, for plaintiff in error.

R. B. RUSSELL, solicitor general, by HARRISON & PEEPLES, *contra.*

SIMMONS, Justice.

The evidence in this case, which will be found in the official report, was sufficient to sustain the verdict of voluntary manslaughter found by the jury, and the court did not err in refusing to grant a new trial on the ground that the verdict was contrary to the evidence.

The other ground of the motion, that the court erred in admitting the defendant's statement at the coroner's inquest, cannot be considered by us, because the motion did not set out what objection was made to the evidence at the time it was introduced, or that any objection was made at that time. *Judgment affirmed.*